1  ZACHARY LINOWITZ, ESQ. (State Bar No. 287368)
   LINOWITZ LAW
2  1300 Clay Street, Suite 600
   Oakland, CA 94612
3  Phone: 510-519-1401
4  zachary@linowitzlaw.com
   *Attorney for Plaintiff*
5

6                    UNITED STATES DISTRICT COURT
7                    NORTHERN DISTRICT OF CALIFORNIA
8

| | |
|---|---|
| FRANK KILLINGSWORTH,  Plaintiff,  vs.  CITY OF RICHMOND, a public entity; RICHMOND POLICE OFFICERS MIGUEL CASTILLO, ROBERTO LOPEZ, JESUS GOMEZ, and DOES 1–5, Jointly and Severally,  Defendants. | Case No.  **PLAINTIFF'S COMPLAINT FOR DAMAGES**  **JURY TRIAL DEMANDED** |

# INTRODUCTION

1. This civil rights action arises from the unlawful detention and excessive use of force by Richmond Police Department ("RPD") officers on June 5, 2025, that left Plaintiff Frank Killingsworth permanently injured and neurologically impaired.

2. Mr. Killingsworth was misidentified by a senior police supervisor, stalked from overhead by a high-resolution police drone despite no lawful basis, and tased seven times in violation of RPD policy, even though he posed no immediate threat to officers or others.

3. The final Taser discharges caused Plaintiff to fall face-first onto concrete, leaving him with catastrophic and permanent injuries, including traumatic brain injury, recurrent seizures, facial and dental fractures, and long-term neurological disability.

4. These harms were the direct result of constitutional violations by the individual officers as well as the City of Richmond's and RPD's unconstitutional policies, customs, and failures to train and supervise them.

# JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 for claims arising under 42 U.S.C. § 1983.

6. The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Richmond, California, in the County of Contra Costa.

# PARTIES

8. Plaintiff FRANK KILLINGSWORTH is an individual and resident of California.

9. Defendant CITY OF RICHMOND is a municipal entity organized under California law and responsible for the policies, practices, and customs of the Richmond Police Department ("RPD").

10. Defendant Officers MIGUEL CASTILLO (#1415), ROBERTO LOPEZ (#1828) and JESUS GOMEZ (#1877) were, at all relevant times, sworn police officers employed by RPD, acting under color of state law and within the course and scope of their employment.

11. Plaintiff is presently unaware of the true names and capacities of Defendant Officers DOES 1–5 and sues them under fictitious names. Plaintiff is informed and believes that DOES 1–5 are other police officers and supervisors who participated in, directed, or failed to prevent the unconstitutional conduct at issue. Plaintiff will seek leave to amend this Complaint to show their true names and capacities when the same are ascertained. Each DOE defendant was an employee/agent of Defendant CITY OF RICHMOND, and at all material times acted within the course and scope of that relationship.

## ADMINISTRATIVE CLAIM COMPLIANCE

12. Plaintiff timely filed a tort claim with CITY OF RICHMOND on August 11, 2025, pursuant to Government Code § 911.2.

13. CITY OF RICHMOND, through its claims administrator, George Hills Company, Inc., acknowledged Plaintiff's claim on August 21, 2025, but took no known further action. Therefore, the claim was deemed rejected by operation of law on or about September 25, 2025, upon expiration of the 45-day period provided by Government Code § 912.4(c).

14. Plaintiff brings this action within the time periods prescribed by Government Code §§ 945.6(a)(1) and (a)(2).

**FACTUAL ALLEGATIONS**

15.     On June 5, 2025, at approximately 7:36 p.m., RPD deployed RAVEN13, an unmanned aerial drone, to observe an alleged "loitering" incident involving two unidentified men standing by a nondescript car parked along 25th Street near Macdonald Avenue.

16.     The aerial drone was deployed at the request of Defendant LOPEZ, to patrol an area of the City that other officers broadly characterized as a "known drug transaction area," without articulating any specific, individualized suspicion of criminal activity.

17.     The high-resolution drone surveillance video shows the men casually conversing with a third man in the driver's seat of the car. The three men are looking at their phones, smiling and laughing, and engaging in no criminal activity or suspicious behavior.

18.     After nearly four minutes of uneventful observation, Plaintiff approaches the car to greet the men, shakes hands with each of them, and continues on his way after 10–15 seconds. There was no lingering, furtive conduct, hand-to-hand exchange, or any other interaction that would support a reasonable suspicion of criminal activity.

19.     While monitoring the drone feed from a room inside RPD, on-duty patrol sergeant Defendant CASTILLO misidentified Plaintiff as "William Agbekoh," recalling that person's history of drug sales and firearm possession from the early or mid-2000s.

20.     Based on Defendant CASTILLO's misidentification, the aerial drone, operated by Officer Michael Pagaling (#1687), was directed to follow Plaintiff for several blocks, clandestinely tracking him from overheard as he walked around the neighborhood.

21.     After nearly five minutes of targeted high-definition surveillance, Plaintiff briefly pauses near a fence, stands still for a few seconds, and then turns back in the direction he had come. During the pause, his body was partially obscured from the drone's view by a tree. While monitoring the live video feed, Defendant CASTILLO speculated, without any factual basis, that

Plaintiff might have retrieved or concealed something at the fence line, and on that speculation alone ordered patrol officers to immediately detain him.

22. Defendants LOPEZ and GOMEZ, working as a two-man unit with GOMEZ at the wheel, quickly located Plaintiff and pulled their patrol car alongside him. Without warning, both officers jumped out of the vehicle. They ordered Plaintiff to turn around so that they could frisk him. Alarmed and confused by the sudden show of authority, Plaintiff responded, "See ya," and fled in fear.

23. Defendants LOPEZ and GOMEZ pursued Plaintiff on foot and, despite the absence of any threat, Defendant LOPEZ fired his "Taser 10" seven times into Plaintiff's back and head. One of the final Taser discharges caused Plaintiff to collapse face-first onto the pavement, shattering facial bones, breaking teeth, and inflicting a severe traumatic brain injury with diffuse axonal damage.

24. RPD Policy 303.5.1 expressly provides that mere flight from police is not good cause for the use of a Taser to apprehend a suspect. Moreover, Policy 303.5.2 provides "special deployment considerations," including subsection (f), which prohibits deploying a Taser against "individuals whose position or activity is likely to result in collateral injury." Despite these directives, Defendant LOPEZ discharged his Taser at Plaintiff while he was running away on concrete, creating a foreseeable risk that he would fall and suffer serious injury. Policy 303.5.3, addressing "targeting considerations," specifically directs officers to avoid intentionally targeting the head and neck, among other sensitive areas of the body. Defendant LOPEZ nevertheless deployed his Taser into Plaintiff's head and back, in violation of this policy.

25. After striking the pavement with his face, Plaintiff lost consciousness and exhibited agonal snoring-like respirations consistent with airway compromise. Defendants LOPEZ and GOMEZ handcuffed him and left him face down for approximately 30 seconds

before rolling him onto his side—an unjustified delay that departed from well-established law enforcement and medical guidelines requiring immediate repositioning to reduce the risk of asphyxiation and to assess breathing and responsiveness.

26. Only after Plaintiff had been tased, rendered unconscious, and handcuffed face-down on the pavement did Defendants conduct a warrantless search of his belongings. They recovered an older, vintage-style revolver determined to be inoperable, a small quantity of suspected narcotics, and $17.43 cash. These items were discovered only after the events giving rise to this action and played no role in the officers' decisions to track, detain, or use force.

27. On June 18, 2025, shortly after Plaintiff regained consciousness and was transferred from emergency care to acute rehabilitation, the Contra Costa County District Attorney's Office filed felony charges against him in Docket No. 02-25-01058 and obtained a warrant for his arrest. Plaintiff was arrested while still undergoing treatment at the hospital.

28. Following an evidentiary hearing in the criminal case, the Contra Costa Superior Court openly questioned the credibility of Defendant CASTILLO's testimonial account, noting: "[I]f you look at this transcript later on, Sergeant Castillo's answer to that question about why he thought Mr. Killingsworth was retrieving something from the fence is an extremely long answer because **he didn't see anything and he's trying to justify it.**" Concluding that the detention violated the Constitution, the court suppressed the evidence and dismissed the criminal case in its entirety.

29. Plaintiff has suffered, and will continue to suffer, substantial damages, including medical expenses, lost earnings and earning capacity, pain and suffering, emotional distress, and loss of quality of life. His injuries are severe and permanent, including but not limited to:

- Traumatic brain injury, specifically diffuse axonal injury with extensive microhemorrhages;

- Recurrent convulsive seizures requiring anti-seizure medication;
- Multiple facial fractures, lacerations, and oral trauma, including the prominent loss of several front teeth;
- Prolonged hospitalization and neurorehabilitation, involving significant pain and expense;
- Lasting cognitive and psychological impairments, such as memory loss, confusion, impaired attention and executive functioning, mood dysregulation, and PTSD; and
- Permanent disability, resulting in loss of independence and homelessness.

At the time of the incident, Plaintiff was in Richmond solely because of a family crisis: his infant son had been hospitalized in intensive care for pneumonia. Until then, Plaintiff had been working to rebuild his life in Fresno, where he had enrolled in a transitional housing and job-training program while supporting himself by cutting hair. The trip to Richmond was meant to be temporary, to support the mother of his infant son during the medical emergency. Just two days after he arrived, Defendants' conduct left him with permanent physical and emotional injuries. Those injuries also destroyed his opportunity to return to Fresno and continue the fragile stability he had begun to establish. He is now homeless again, without the supportive services he had secured before Defendants' misconduct derailed his progress.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Unreasonable Search and Seizure / 42 U.S.C. § 1983 / Fourth Amendment**

*Plaintiff v. Defendants Castillo, Lopez and Gomez*

30.  Plaintiff realleges all paragraphs in this complaint as if fully set forth herein.

31.  At all relevant times, Plaintiff had a clearly established right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures,

including detentions lacking reasonable suspicion of criminal activity and frisks lacking individualized suspicion that he was armed and dangerous.

32. Defendant CASTILLO ordered Plaintiff's detention based on a stale and mistaken identification, coupled with unfounded speculation that Plaintiff had retrieved or concealed something near a fence. CASTILLO lacked any articulable facts to suggest Plaintiff was engaged in, or about to engage in, criminal activity. The supposed justification came from high-definition drone surveillance video which, even when Plaintiff's body was partially obscured from view, showed no movement consistent with retrieving, concealing, or discarding any object. Rather than indicating criminal conduct, the video depicted only innocuous activity. CASTILLO's reliance on the drone video to justify detention was unreasonable and constituted a reckless misuse of powerful surveillance technology.

33. Defendants LOPEZ and GOMEZ executed this detention by confronting Plaintiff and ordering him to submit to a frisk. Defendants did so without lawful basis, without reasonable suspicion that Plaintiff had committed a crime, and without any particularized facts suggesting Plaintiff was armed and dangerous.

34. Defendants' actions were not isolated mistakes but reflected a disregard for the basic constitutional limits on police authority. The supposed grounds for the detention were implausible, contradicted by readily observable facts, and motivated by unfounded speculation rather than objective evidence.

35. As later confirmed by the Contra Costa Superior Court's suppression ruling, Defendants' conduct constituted an unlawful seizure and search in violation of Plaintiff's clearly established rights under the Fourth Amendment.

36. As a direct and proximate result of the unlawful seizure, Plaintiff suffered significant harms, including physical injury and disfigurement, emotional distress, loss of liberty,

humiliation, and ongoing psychological trauma. Plaintiff continues to suffer from the consequences of Defendants' unconstitutional conduct.

37. Defendants acted intentionally, willfully, and with reckless disregard for Plaintiff's rights. Their conduct was malicious and oppressive, thereby entitling Plaintiff to an award of punitive damages to deter similar violations in the future.

38. Plaintiff is entitled to compensatory damages, including general and special damages, punitive damages, costs of suit, and reasonable attorney's fees and expenses under 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION

**Excessive Force / 42 U.S.C. § 1983 / Fourth and Fourteenth Amendments**

*Plaintiff v. Defendant Lopez*

39. Plaintiff realleges all paragraphs in this complaint as if fully set forth herein.

40. At all relevant times, Plaintiff had a clearly established right under the Fourth Amendment to the United States Constitution to be free from the use of excessive and unreasonable force by law enforcement officers.

41. Plaintiff posed no immediate threat to the safety of officers or others and was suspected of no violent crime. He was not physically aggressive and did not resist in a manner that could justify the use of significant and potentially lethal force, including a conducted energy weapon such as a Taser.

42. Despite this, Defendant LOPEZ deployed his "Taser 10" against Plaintiff a total of seven times, including direct discharges to Plaintiff's head and back. This was done even though:

 a. RPD Policy 303.5.1 expressly prohibits the use of a Taser based on flight alone;

 b. RPD Policy 303.5.2(f) cautions against deployment where the subject's activity is likely to cause collateral injury; and

PLAINTIFF'S COMPLAINT
Killingsworth v. City of Richmond, et al.

9

c.  RPD Policy 303.5.3 specifically directs officers to avoid targeting the head, neck, and other sensitive areas.

43. Defendant LOPEZ's conduct was objectively unreasonable under the circumstances and grossly disproportionate to any legitimate law enforcement need. While Plaintiff briefly attempted to flee the encounter, mere flight does not justify the use of intermediate force, let alone multiple Taser discharges to the head and back. Under *Graham v. Connor*, 490 U.S. 386 (1989), the relevant considerations include the severity of the crime, the threat posed, and the nature of any resistance. Here, Plaintiff was suspected of no violent offense, posed no immediate threat to anyone, and exhibited at most an attempt to flee. The use of a Taser in this context—contrary to both constitutional standards and RPD's written policies—was excessive and unlawful.

44. The force used by Defendant LOPEZ was excessive, unnecessary, and reckless. The misuse of the Taser in a manner known to create a high risk of serious injury transformed an investigatory stop into a life-altering assault.

45. As a direct and proximate result of Defendant LOPEZ's excessive force, Plaintiff sustained catastrophic injuries, including traumatic brain injury, facial and dental fractures, and neurological impairment. Plaintiff has endured significant pain and suffering, emotional distress, loss of liberty, and lasting disability.

46. On information and belief, prior to June 5, 2025, Defendant LOPEZ engaged in at least one other incident in which he discharged his Taser into the back of an individual fleeing from a detention unsupported by reasonable suspicion of criminal activity, much less any violent or threatening conduct. This prior incident demonstrates a pattern of using excessive and unconstitutional force by Defendant LOPEZ, specifically his repeated use of the Taser against individuals who posed no threat while attempting to flee unlawful detentions.

47. Defendant LOPEZ's conduct was malicious, oppressive, and undertaken in reckless disregard of Plaintiff's constitutional rights, thereby entitling Plaintiff to punitive damages in addition to compensatory damages, attorney's fees, and costs pursuant to 42 U.S.C. § 1988.

### THIRD CAUSE OF ACTION

### Municipal Liability (Monell) / 42 U.S.C. § 1983

*Plaintiff v. Defendant City of Richmond*

48. Plaintiff realleges all paragraphs in this complaint as if fully set forth herein.

49. The constitutional violations committed against Plaintiff were not isolated acts of individual misconduct, but the direct and foreseeable result of Defendant CITY OF RICHMOND's policies, customs, and failures to train, supervise, and discipline its officers. These include, but are not limited to:

a. RPD's reliance on unverified, stale identifications and vague "high-crime area" designations to justify detentions without individualized suspicion;

b. Deployment of aerial surveillance drones to monitor and track individuals absent any particularized suspicion, coupled with the failure to train officers on the constitutional limits of using such surveillance to justify detentions;

c. Failure to adequately train officers on the constitutional limits of investigative detentions and frisks, including the requirements of *Terry v. Ohio*, 392 U.S. 1 (1968), and related precedent;

d. Tolerance of Taser use against individuals who merely flee, contrary to RPD's own written Policy 303.5.1, which expressly prohibits such deployments; and

e. Failure to enforce compliance with RPD's written policies and widely accepted law-enforcement standards, resulting in a custom of disregard for constitutional rights.

50. As alleged above, prior to the incident in question, Defendant LOPEZ engaged in at least one other incident in which he discharged his Taser into the back of an individual fleeing from a detention unsupported by reasonable suspicion of criminal activity, much less any violent or threatening conduct. Defendant CITY OF RICHMOND was aware, or reasonably should have been aware, of this incident but failed to take adequate corrective or disciplinary action. This prior misconduct placed the City on notice that LOPEZ—and other officers similarly trained and supervised—were likely to engage in similar unconstitutional conduct, yet the City acted with deliberate indifference in failing to intervene.

51. Defendant CITY OF RICHMOND and RPD's policies, customs, and failures to train and supervise were the moving force behind Plaintiff's unlawful detention and the excessive force that caused his injuries. By tolerating and perpetuating these deficiencies, the City acted with deliberate indifference to the substantial risk that constitutional violations of the type suffered by Plaintiff would occur.

52. As a direct and proximate result, Plaintiff suffered and continues to suffer permanent physical injuries, pain and suffering, emotional distress, and loss of liberty, entitling him to compensatory damages, punitive damages against the individual officers, and attorney's fees and costs under 42 U.S.C. § 1988.

## FOURTH CAUSE OF ACTION

### Battery (California Law)

*Plaintiff v. Defendants Lopez and City of Richmond*

53. Plaintiff realleges all paragraphs in this complaint as if fully set forth herein.

54. Under California law, a peace officer commits a battery when he or she uses unreasonable or excessive force in making or attempting to make an arrest, detention, or seizure.

55. Defendant LOPEZ intentionally and unlawfully applied force to Plaintiff by discharging his "Taser 10" seven times into Plaintiff's body, including to the head and back. These discharges were deliberate acts, not accidents, and were carried out with knowledge of the high likelihood of causing severe injury.

56. At the time of the incident, Plaintiff was suspected of no violent crime and posed no immediate threat to officers or others. Defendant LOPEZ's repeated Taser deployments were neither legally justified nor reasonably necessary under the circumstances, but instead were excessive, wanton, and reckless.

57. As a direct and proximate result of Defendant LOPEZ's battery, Plaintiff suffered catastrophic physical injuries, including traumatic brain injury, facial and dental fractures, and lasting neurological impairment, as well as severe pain and emotional distress.

58. Defendant CITY OF RICHMOND is vicariously liable for this tort under California Government Code § 815.2, because Defendant LOPEZ was acting within the course and scope of his employment as a RPD officer when he committed the battery.

59. Plaintiff is entitled to compensatory damages, including general and special damages, and to punitive damages against Defendant LOPEZ for his malicious, oppressive, and reckless conduct.

## FIFTH CAUSE OF ACTION

### Negligence (California Law)

*Plaintiff v. Defendants Castillo, Lopez, and City of Richmond*

60. Plaintiff realleges all paragraphs in this complaint as if fully set forth herein.

61. At all relevant times, Defendants CASTILLO and LOPEZ owed Plaintiff a duty of care to act reasonably and prudently in the performance of their law enforcement duties, including the duties to refrain from initiating detentions without reasonable suspicion, to accurately assess

PLAINTIFF'S COMPLAINT
Killingsworth v. City of Richmond, et al.

13

and interpret information before acting on it, and to use only such force as was reasonably necessary under the circumstances.

62. Defendant CASTILLO breached his duty by misidentifying Plaintiff and ordering a detention based on unfounded and speculative assumptions, including his unreasonable interpretation of high-definition drone surveillance that revealed no criminal conduct.

63. Defendant LOPEZ breached his duty by deploying his Taser seven times against Plaintiff as he ran away on pavement, including to his head and back, despite the absence of any threat of violence, in direct violation of RPD policy and well-established policing standards.

64. Defendants' negligent acts and omissions were a substantial factor in causing Plaintiff's catastrophic and permanent injuries, including traumatic brain injury, facial and dental fractures, neurological impairment, pain, suffering, and loss of enjoyment of life.

65. Defendant CITY OF RICHMOND is vicariously liable for these torts under California Government Code § 815.2 because Defendants CASTILLO and LOPEZ were acting within the course and scope of their employment as RPD officers when they committed the negligent acts alleged herein.

66. Plaintiff is entitled to recover compensatory damages, including general and special damages, against Defendants for the injuries and losses proximately caused by their negligence.

## SIXTH CAUSE OF ACTION

### Bane Act / Cal. Civ. Code § 52.1

*Plaintiff v. Defendants Castillo, Lopez, and City of Richmond*

67. Plaintiff realleges all paragraphs in this complaint as if fully set forth herein.

68. California Civil Code § 52.1 (the "Bane Act") provides a private right of action where any person interferes, or attempts to interfere, by threats, intimidation, or coercion, with the

exercise or enjoyment of rights secured by the Constitution or laws of the United States or California.

69. Plaintiff had rights secured by the United States Constitution and the California Constitution, including, but not limited to, the rights to be free from unreasonable searches and seizures, unlawful detention, and the use of excessive force.

70. Defendants CASTILLO and LOPEZ, acting under color of law and within the course and scope of their employment with RPD, interfered with Plaintiff's rights by means of intimidation, coercion, and violence.

71. By unlawfully ordering Plaintiff's detention without anything resembling reasonable suspicion, Defendant CASTILLO interfered with Plaintiff's constitutional rights by means of coercion and intimidation.

72. By repeatedly discharging his Taser into Plaintiff's back and head as he fled on concrete—despite the absence of any threat whatsoever—Defendant LOPEZ used coercion, intimidation, and violence to interfere with Plaintiff's exercise and enjoyment of constitutional rights.

73. Defendants' conduct was not negligent or accidental, but intentional, malicious, and carried out under color of law, with the specific purpose and effect of chilling, burdening, and violating Plaintiff's exercise and enjoyment of his secured rights.

74. Pursuant to California Government Code § 815.2, Defendant CITY OF RICHMOND is vicariously liable for the Bane Act violations committed by its officers within the course and scope of their employment.

75. As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe physical injuries, pain and suffering, emotional distress, loss of liberty, and lasting neurological

impairment, and is entitled to damages under Cal. Civ. Code §§ 52(b) and 52.1(b), including compensatory damages, punitive damages, statutory penalties, and attorney's fees.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Award general, special, and compensatory damages in an amount according to proof at trial;

2. Award punitive damages against the individual Defendants to the extent permitted by law;

3. Declare that Defendants' conduct violated Plaintiff's rights under the United States Constitution, the California Constitution, and California law;

4. Issue injunctive relief requiring the City of Richmond to adopt, implement, and enforce policies, training, and supervision sufficient to prevent future violations of the type alleged herein, including limits on drone surveillance and conducted energy device use;

5. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, Cal. Civ. Code § 52.1(h), and Cal. Code Civ. Proc. § 1021.5;

6. Award pre-judgment and post-judgment interest as permitted by law; and

7. Grant such other and further relief as the Court deems just and proper.

Dated: September 26, 2025

Respectfully submitted,

LINOWITZ LAW

By:  ZACHARY LINOWITZ
Attorney for Plaintiff